57 CCPA

**Application of Vernon K. CHARVAT.**

**Patent Appeal No. 8338.**

United States Court of Customs
and Patent Appeals.

July 9, 1970.

John C. Oberlin, Oberlin, Maky, Donnelly & Renner, Washington, D. C., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; R. V. Lupo, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

Charvat appeals from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of all the claims in his application[1] as unpatentable under 35 U.S.C. § 103.

*The Invention*

The application discloses a composite tool of the power-driven rotary type. The tool is in the form of a wheel having radially-extending bristles of brush material embedded in a body of foamed polyurethane material for support. The bristles may be of copper or stainless steel wire, vegetable fibers such as tampico fiber and sisal, or plastic filaments such as nylon. It is "preferred" that the polyurethane be of the " 'closed cell' type."

Claim 1 is representative:

1. A composite brushing tool having radially extending bristles and a polyurethane composition interposed therebetween maintaining said bristles substantially uniformly spaced apart.

Additional recitations, such that the composition is polyurethane rubber, is an elastomeric resiliently deformable composition, or is a closed cell polyurethane, and that the bristles are wire, are included in various of the other claims, numbered 2–12.

*The Rejection*

The claims stand rejected for obviousness on Swart[2] or Stingley[3] in view of Upton,[4] with further reference to Hurst.[5] Swart and Stingley both relate to brushes in the form of wheels having radially-extending wire bristles embedded in matrixes of elastormeric material. Upton discloses a rotary abrasive wheel composed of discrete abrasive grains held in spaced relationship by a foamed polyurethane matrix. The examiner and the board considered it obvious to substitute polyurethane material as used in Upton for the matrix material of Swart or Stingley. They also referred to Hurst as showing that it is old in the grinding or abrading art to intrude plastic material between radial wire strands.

1. Serial No. 516,379, filed December 27, 1965, for "Composite Brushing Tool."

2. U. S. patent 2,648,084, granted August 11, 1953.

3. U. S. patent 2,950,495, granted August 30, 1960.

4. U. S. patent 2,972,527, granted February 21, 1961.

5. U. S. patent 2,680,335, granted June 8, 1954.

*Opinion*

Appellant regards the propriety of the rejection as depending upon the answer to "two questions," which he states as follows:

Does Upton, Jr. relate to an art which is the same or analogous to the art to which Swart and Stingley relate, and, if so, would it be obvious to one skilled in the brushing art to combine the teachings of such references?

He states that a brush, such as his structure, is a "device wherein the ends of flexible bristles engage the work in an abrading but nevertheless yielding manner so as to remove burrs and other surface irregularities and also to provide a desired surface finish on the work piece." He further states that an abrasive wheel, as is Umpton's device, "relies upon the discrete abrasive grains contained therein to remove material from the workpiece and to provide a desired finish thereon, but in quite a different manner."

However, the basic similarities of a *rotary* brush and an abrasive wheel, both of which are rotated in contact with the surface of the workpiece to wear away material therefrom, are apparent even from appellant's above characterizations. We are satisfied that a person of ordinary skill in the art seeking to improve the elastromeric matrix of the Stingley brush, for example, would look to the abrasive wheel art, where Upton is found, for suggestions.

It is true that foamed polyurethane is not named as an example of the elastomers that Stingley uses. However, Upton not only discloses that foamed polyurethane holds the abrasive grains in place analogously to Stingley's elastomers holding the bristles in position, but he also discloses that it constitutes a bond for fibers embedded in the wheel for strengthening it, which fibers include fibers of steel corresponding to Stingley's metal bristles. Furthermore, Stingley specifies that elastomers which are suitable for his purpose are comparatively flexible, do not excessively smear the work under normal operating conditions and are substantially incapable of melting at working temperatures. Stingley also states that the elastomeric material should preferably be so produced as to contain a plurality of gas pockets and that the cellular structure of such material permits limited controlled movement of the brush bristle wires or filaments. The cellular structure also is described as reducing the weight of the tool and making it "more resiliently responsive." Those qualities correspond substantially to the very advantages that appellant attributes to a polyurethane matrix in his specification. Foamed polyurethane is a well-known material and no reason is apparent why workers in this art would not be aware of its characteristics. We are convinced that a person of ordinary skill in the art would have found it obvious to substitute the foamed polyurethane of Upton for the elastomers disclosed for bonding the bristles in Stingley.

Although appellant does make independent reference in his argument to the recitation of a closed cell structure in certain claims, we note that he has not asserted critical significance in that recitation. Accordingly, we agree with the position, taken by the board, that Stingley's disclosure that his elastomeric matrix have "gas pockets and a cellular structure" is adequate to make it obvious that the polyurethane substituted from Upton be formed with closed cells.

The decision is affirmed.

Affirmed.